IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JIMMIE DUNLAP, #N82847, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| vs. | )   Case No. 3:20-cv-00462-SMY |
| | ) |
| JOHN TROST, | ) |
| JANE DOE, *Registered Nurse*, | ) |
| TIMOTHY ADESANYA, | ) |
| SHAW, *Registered Nurse* | ) |
| SANTOS, and | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| | ) |
|     **Defendants.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Jimmie Dunlap, an inmate of the Illinois Department of Corrections, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Following preliminary review under 28 U.S.C. § 1915A, Plaintiff's Complaint and his First Amended Complaint were dismissed for failure to state a claim for relief. (Docs. 9, 26). He was granted leave to file a Second Amended Complaint, which is now before the Court for review under § 1915A. Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### The Second Amended Complaint

Plaintiff makes the following allegations in his Second Amended Complaint (Doc. 30): Plaintiff's medical history includes atrial fibrillation, congestive heart failure, shortness of breath, high cholesterol, hypertension, and a groin hernia. He had hernia surgery in 2014. Plaintiff was

transferred to Menard Correctional Center in May 2016.

At some time in August or September 2016, Plaintiff saw Dr. Trost regarding chest pains. He told Dr. Trost that he was having difficulty breathing and requested an EKG and pain medication. Dr. Trost denied his requests and discharged him from the health care unit (HCU). Subsequently, Plaintiff collapsed in the yard and was taken to a hospital for treatment of a heart condition.

Plaintiff saw Dr. Trost again on October 14, 2016 for chest pains. He requested pain medication and a referral for a cardiology consult. Dr. Trost denied his requests. Plaintiff suffered severe untreated chest pains which caused sleep deprivation.

Plaintiff was evaluated at sick call on December 1, 2016 for complaints of swelling in his right groin. The nurse practitioner noted his history of groin hernia and his current condition of a lump in his right groin for one year with growth. The nurse practitioner referred Plaintiff to see Dr. Trost and he was scheduled for December 7, 2016. His appointment was cancelled and rescheduled for December 9, 2016 but that appointment was also cancelled. As a result of the cancelled appointments, Plaintiff went without pain medication for his groin pain which caused sleep deprivation.

Plaintiff was transferred to Pinckneyville Correctional Center in April 2017. He noticed a blister over his surgery suture line on August 10, 2018. He had pain with walking and the area was red, warm, and draining fluid. He complained about the pain to Nurse Jane Doe but she refused him medical treatment and told him to put in a sick call slip. His suture line opened on August 12, 2018 and he was taken to the HCU. A nurse cleaned his wound and foreign material was removed. The nurse scheduled him to see the doctor the following morning. Plaintiff went to the hospital on August 14, 2018 and had surgery the next day.

After Plaintiff returned to Pinckneyville, he continued to suffer pain and bleeding. When the medication prescribed at the hospital expired, Plaintiff asked Dr. Timothy Adesanya to extend the medication because it had been effective in relieving his pain. Dr. Adesanya denied his request. Dr. Adesanya told Plaintiff he had consulted with Dr. Trost regarding the prior treatment of Plaintiff's medical conditions. Dr. Adesanya told Plaintiff that Dr. Trost stated Plaintiff complains too much about not receiving proper medical treatment. Thereafter, Dr. Adesanya prescribed a lesser effective pain medication. Plaintiff informed Dr. Adesanya that the medication was ineffective, but he was ignored.

Plaintiff was transferred to Centralia Correctional Center on October 4, 2018. On one occasion in October 2018, he did not receive his cardiac medication because he was visiting with his fiancée. The tier officer told him he would be allowed to receive his medication after the visit. After the visit, he was escorted by the tier officer to the HCU for his medication. Nurse Shaw refused to give him his cardiac medication and told him she was done distributing medication. Her denial of his medication caused him chest pains.

During a visit with Dr. Santos about his hypertension and another medical issue on January 28, 2019, Plaintiff began to have chest pains and requested treatment. Dr. Santos informed him that he was not there to see him for the chest pain and he needed to put in a sick call slip. Dr. Santos refused to give him an EKG. Later that evening he was called to the HCU for an EKG but it was cancelled because there was no paperwork. He was rescheduled several times but there continued to be no paperwork for the EKG. After weeks of cancellations, Plaintiff was eventually given an EKG. As a result, he suffered untreated chest pain.

Wexford has a policy of delaying and denying medical care to save costs. This cost saving policy compromises the medical care provided for prisoners such as Plaintiff. The treatment

decisions by Dr. Trost, Nurse Jane Doe, Dr. Adesanya, Nurse Shaw, and Dr. Santos were influenced by this cost saving policy.

## Severance

Unrelated claims against different defendants belong in separate lawsuits. *George v. Smith*, 507 F.3d 605, 607 (citing 28 U.S.C. § 1915(b)).  And, the Seventh Circuit has warned district courts not to allow inmates "to flout the rules for joining claims and defendants, see FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017).

Relatedly, Rule 20 prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit.  Under Rule 20, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *George*, 507 F.3d at 607.  Thus, to join defendants under Rule 20, at least one claim against the first defendant must be transactionally related to at least one claim against the second defendant and so on.  If this requirement is not met, the defendants were improperly joined and the actions must be severed.

Rule 18 allows a party to join unrelated claims against defendants in a lawsuit.  However, this Rule applies only after the requirements for joinder of parties have been satisfied under Rule 20. *Intercon Research Assn., Ltd. v. Dresser Ind., Inc.*, 696 F.2d 53, 57 (7th Cir. 1983) (citing 7 Charles Alan Wright et al., *Federal Practice & Procedure*).  Because Rules 18 and 20 can sometimes permit the joinder of a unrelated claims, courts have broad power under Rule 21 to sever even properly-joined claims. *See UWM Student Association v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018); *Vermillion v. Levenhagen*, 604 F. App'x. 508, 513 (7th Cir. 2015).

In the instant lawsuit, Plaintiff asserts three groups of claims against the individual defendants:

1) A claim against Dr. Trost for failing to treat Plaintiff's chest pain from August/September 2016 and October 2016 when he was incarcerated at Menard ("Menard claim").

2) Claims against Nurse Jane Doe for denying medical care for a blister on his surgery suture line and Dr. Adesanya for denial of adequate post-surgery pain management in August 2018 while he was incarcerated at Pinckneyville ("Pinckneyville claims").

3) Claims against Nurse Shaw for denying Plaintiff his cardiac medication in October 2018 and against Dr. Santos for refusing to treat Plaintiff's chest pain in January 2019 while he was incarcerated at Centralia ("Centralia claims").

Plaintiff's allegations suggest that the constitutional violations at issue are the result of decision-making that was influenced by a Wexford cost saving policy and are linked by the claim against Wexford. Thus, the claims may involve at least one common question of law or fact. The claims are not, however, transactionally related and should be severed. The medical care at each facility was a distinct occurrence on a specific date under unique circumstances. Although the cost saving policy claim against Wexford appears to create a link, even that claim depends on the unique facts of each encounter with the medical providers. Additionally, the allegations that Dr. Adesanya's medical treatment decision was influenced by a discussion he had with Dr. Trost and that the Centralia medical providers were influenced by Dr. Adesanya's medical treatment decisions as set forth in the medical records are not sufficient to avoid severance.

The Court will exercise its discretion and sever the Pinckneyville claims and the Centralia claims into two separate lawsuits. These separate lawsuits will have newly assigned case numbers and shall undergo preliminary review pursuant to § 1915A after the new case numbers and judge assignments have been made. Severed case #1 will consist of the Pinckneyville claims against Nurse Jane Doe, Dr. Timothy Adesanya, and Wexford Health Sources, Inc. Severed case #2 will

consist of the Centralia claims against Nurse Shaw, Dr. Santos, and Wexford Health Sources, Inc. The Menard claim against Dr. John Trost and Wexford Health Sources, Inc. will remain in this case and the merits of that claim will be reviewed in this Order.

### Merit Review of Menard claim

Based on the allegations in the Second Amended Complaint, the Court designates the following claim:

**Count 1:** Eighth Amendment claim against Dr. Trost for deliberate indifference to Plaintiff's serious medical condition by denying a referral for a cardiology consult, denying pain medication, and failing to provide diagnostic testing and treatment for Plaintiff's chest pains and against Wexford Health Sources, Inc. for their cost saving policy that influenced Dr. Trost's treatment decisions.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. Any other claim that is mentioned in the Second Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

Prison medical providers violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *See Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts suggesting that (1) he suffered from an objectively serious medical condition, and

---

[1] Plaintiff complains about appointments that were cancelled related to groin pain in December 2016 but he does not associate any defendant with that claim. He has not alleged who was responsible for cancelling the appointments or that there was any deliberate indifference involved in cancelling the appointments. As a result, any claim he intended to state regarding the cancelled appointments is considered dismissed for failure to state a claim.

(2) the defendant was deliberately indifferent to his medical needs. *Id*. *See also Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A failure to refer a prisoner to a specialist may constitute deliberate indifference if the choice is "blatantly inappropriate." *See Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014). As such, Plaintiff states a colorable claim for deliberate indifference against Dr. Trost. Additionally, Plaintiff has stated a colorable claim against Wexford that medical care was denied as a result of Wexford policies and practices. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference if it had a policy or practice that caused the violation).

## Disposition

As provided herein, the Pinckneyville claims and the Centralia claims are **SEVERED** into two separate lawsuits. **Severed case #1** will consist of the Pinckneyville claims against Nurse Jane Doe, Dr. Timothy Adesanya, and Wexford Health Sources, Inc. **Severed case #2** will consist of the Centralia claims against Nurse Shaw, Dr. Santos, and Wexford Health Sources, Inc. The Clerk of Court is **DIRECTED** to file the following documents in each newly-severed case:

1) The Second Amended Complaint (Doc. 30);

2) The Motion for Leave to Proceed *In Forma Pauperis* (Doc. 2);

3) This Memorandum and Order.

The Clerk of Court is **DIRECTED** to **TERMINATE** Jane Doe, Adesanya, Shaw, and Santos as defendants in this case. The Menard claim against Dr. John Trost and Wexford Health Sources, Inc. remains in this case. The Second Amended Complaint (Doc. 30) states a colorable Eighth Amendment deliberate indifference claim in Count 1 against Dr. John Trost and Wexford Health Sources, Inc.

The Clerk of Court shall prepare for **JOHN TROST** and **WEXFORD HEALTH SOURCES, INC.**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint (Doc. 10), and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Second Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Second Amended Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED: March 15, 2021**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Second Amended Complaint. After service has been achieved, the Defendants will enter an appearance and file an Answer to your Second Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed Answers, the Court will enter a Scheduling and Discovery Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**